UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ZACK MCCAIN III,                     :
                                     :
        Plaintiff,                   :
                                     :
    v.                               :   Case No. 2:14-cv-92
                                     :
UNITED STATES OF AMERICA;            :
CORRECTIONS CORPORATION              :
OF AMERICA; EQUAL                    :
EMPLOYMENT OPPORTUNITY               :
COMMISSION; STATE OF                 :
VERMONT; KOHL'S DEPARTMENT           :
STORES, INC.; COSTCO                 :
WHOLESALE CORPORATION;               :
R. BENOIT,; PATRICK                  :
GREENLET; ADAM O'NEIL;               :
FENG K. AN; MARY AHRENS;             :
BART CHAMBERLAIN; ROBERT             :
SANDERS; JACQUELINE A.               :
BERRIEN; MIRO WEINBERGER;            :
CITY OF BURLINGTON; TRAVIS           :
PLOOF; CHRIS O'CONNORS;              :
BILL SORRELL; CHARLES                :
JORDAN; MIKE HENRY; DOWNS            :
RACHLIN AND MARTIN; DAVID            :
MCLEAN; PETER SHUMLIN;               :
MIKE SUNGUARD; sued in               :
their individual and                 :
official capacities,                 :
                                     :
        Defendants.                  :

**OPINION AND ORDER**

    Plaintiff Zack McCain, proceeding *pro se* and *in forma pauperis*, brings this civil rights action alleging discrimination on the basis of his race.  In an Opinion and Order dated March 29, 2016, the Court granted several defendants' motions to dismiss and/or for summary judgment.  Mr. McCain has now moved

for leave to file an interlocutory appeal of the March 29, 2016 ruling.  In addition, defendant Costco Wholesale Corporation ("Costco") has moved to clarify whether the Opinion and Order dismissed Defendant Mary Ahrens Vadasz from the case.  Also pending before the Court are several new motions to dismiss.

For the reasons set forth below, defendants' motions are each **granted** with the exception of the motion to dismiss for lack of proper service filed by defendants Greenlet and Adam O'Neil, which is **denied**.  Mr. McCain's motion for leave to file an interlocutory appeal and for a certificate of appealability, or in the alternative for reconsideration, is also **denied**.

## I.   General Factual Background

Mr. McCain claims that he has been unable to find or maintain employment because of his criminal record and his race. The Second Amended Complaint is brought against a host of defendants, including potential employers, government actors, and a private prison company.  Mr. McCain's legal claims assert various acts of discrimination, retaliation, and conspiracy.

In its most recent Opinion and Order, the Court dismissed several defendants on the basis of motions filed under Rules 12 and 56 of the Federal Rules of Civil Procedure.  The reasons for those dismissals, as set forth in the Court's 33-page ruling, were varied, but centered mainly on Mr. McCain's failure to state plausible claims of conspiracy to incarcerate African Americans,

Thirteenth Amendment violations, discrimination, and retaliation.

## II.  Motion for Interlocutory Appeal

Mr. McCain now seeks leave to file an interlocutory appeal of the Court's March 29, 2016 ruling.  Title 28, Section 1292(b) provides for certification of an order for interlocutory appeal when the court determines: "(1) that such order involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b). "These three prerequisites create a significant hurdle to certification, and the barrier is only elevated by the mandate that section 1292(b) be 'strictly limited' because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  *McNeil v. Aguilos*, 820 F. Supp. 77, 79 (S.D.N.Y. 1993) (Sotomayor, J.) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990)); *see also In re Ambac Fin. Grp. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010) (noting that certification is only granted in "exceptional circumstances").  The party moving for leave to file an interlocutory appeal has the burden of showing that all three criteria are met.  *See Casey v. Long Island R.R.*, 406 F.3d 142, 146 (2d Cir. 2005).

In this case, the Court applied well-established law in its rulings on the motions to dismiss and for summary judgment. Specifically, the Court applied the standards for pleadings under Rule 12, as well as longstanding law applicable to Mr. McCain's conspiracy, Thirteenth Amendment, discrimination, and related claims.  As discussed below, Mr. McCain's current motion does not highlight any controlling question of law as to which there is a substantial ground for difference of opinion, nor any reason why an interlocutory appeal would materially advance the litigation.

Mr. McCain contends in part that the Court misapplied Thirteenth Amendment law, and in particular the holding in *McGarry v. Pallito*, 687 F.3d 505 (2d Cir. 2012).  *McGarry* held that a pre-trial detainee may not be compelled to work in the laundry while in prison.  687 F.3d at 511, 514.  Mr. McCain claims that *McGarry* supports his current claim, since his criminal history would have deprived him of the ability to find work, which in turn would have resulted in missed child support payments and incarceration.  He argues that "[t]he controlling issue is whether or not requiring the plaintiff to write down inflammatory criminal information onto an employment application, while the State of Vermont threatens him with imprisonment . . . constitutes involuntary servitude."  ECF No. 136 at 11.

The Court's Opinion and Order distinguished *McGarry*, concluding, among other things, that there was no allegation of

4

forced or coerced labor by any private defendants, and that the
Thirteenth Amendment does not allow a claim for damages against
the United States and its agencies.  Accordingly, the Court
concluded that Mr. McCain's failed to state a plausible claim as
required under Rule 12.  While he now disagrees with the Court's
conclusions, he has not shown any substantial ground for
difference of opinion.

Mr. McCain also alleges errors with respect to his claims
under Sections 1981 and 1985.  Those claims are based, in part,
upon a statement at a job fair that warned convicted felons not
to apply for work.  Mr. McCain further asserts that there was an
unlawful agreement between potential employers and the EEOC.  The
Court considered and disposed of these claims, and Mr. McCain's
disagreement again fails satisfy to the substantial ground
requirement of Section 1292(b).

Moreover, Mr. McCain's motion does not explain why an
immediate appeal would materially advance the litigation.  In
fact, an interlocutory appeal would most likely have the opposite
effect, as the remaining defendants would need to wait for the
appeal to be decided before going to trial.  *See, e.g., Patient A
v. Vermont Agency of Human Servs.*, No. 5:14-CV-00206, 2015 WL
8665349, at *2 (D. Vt. Dec. 11, 2015) ("an immediate appeal will
greatly delay the litigation because the other claims and the
other parties will wait until the matter is returned before

proceeding towards trial").

Section 1292(b) is intended to provide a "rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. The Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). In this case, Mr. McCain expresses his disagreement with the Court's conclusions, but has not shown the sort of "exceptional circumstances" required by the statute. *In re Ambac Fin. Grp. Sec. Litig.*, 693 F. Supp. 2d at 282. His motion is therefore **denied**. His request for a certificate of appealability is correspondingly **denied**.

In the alternative, McCain asks for reconsideration of the Court's prior orders. As noted by the Second Circuit Court of Appeals, "[t]he standard for granting a [motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotations omitted).

Mr. McCain has failed to meet this demanding standard for

reconsideration.  As discussed above, he clearly disagrees with several of the Court's conclusions.  Disagreement alone, however, does not justify reconsideration, and Mr. McCain has not shown a change in controlling law, new evidence, or the need to correct clear error or manifest injustice.  His alternative motion for reconsideration is therefore **denied.**

## III. Motion for Clarification

Defendants Costco and Mary Ahrens Vadasz have moved the Court to clarify the status of Ms. Vadasz after the Opinion and Order of March 29, 2016.  Those defendants submit that although the Court dismissed all of Mr. McCain's statutory and constitutional claims against her, the docket lists her as an active defendant.  Upon review of the Opinion and Order, it is clear that all claims against Ms. Vadasz were dismissed.  The motion for clarification is **granted,** and defendant Mary Ahrens Vadasz (also listed on the docket as Mary Ahrens) shall be terminated as a party.

## IV.  City of Burlington Defendants' Motion to Dismiss

The City of Burlington, Mayor Miro Weinberger, and Burlington Police Officer Mike Henry ("City Defendants") have filed a motion to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6).  The motion is unopposed.

Mr. McCain's claims against the Mayor and Officer Henry arise out of three separate, but related, incidents.  In the

first, employees at the law firm of Downs Rachlin and Martin,
which represents defendant Macy's in this case, asked Mr. McCain
to leave their office.  Mr. McCain alleges that after leaving the
building, he approached Officer Henry and asked about the
legality of being asked to leave private property because of a
pending lawsuit.  Officer Henry reportedly replied, "They don't
have to give you any reasons, just like my home, if I tell you to
leave, I don't have to give you no reasons."  ECF No. 93 at 43.
Mr. McCain claims that Officer Henry's statement constituted a
City policy to discriminate on the basis of race.

On October 10, 2014, Mr. McCain allegedly spoke personally
with Mayor Weinberger.  The Mayor, like Officer Henry, reportedly
stated his opinion that a private law firm could ask a person to
leave their office when that person has a lawsuit pending against
one of the firm's clients.  Mr. McCain claims that the Mayor's
statement constituted acquiescence to race discrimination and
retaliation for filing a lawsuit.

The third incident involved Mr. McCain allegedly entering a
Panera restaurant hoping to apply for employment.  When he saw
Officer Henry questioning an African American man in the entry,
he told a Panera employee that the questioning appeared to be
racist.  The employee allegedly responded that Mr. McCain needed
to order food in order to remain in the restaurant, and later
asked Officer Henry to issue him a no trespass citation.  Mr.

McCain claims that Officer Henry issued him such a citation "to stay away from Panera's for a year."  ECF No. 93.

With respect to the conversations with Officer Henry and Mayor Weinberger after the Downs Rachlin and Martin incident, no plausible claim can arise from their statements.  The Supreme Court has held that the First Amendment right to free expression does not give persons the right to enter private property.  *See Hudgens v. N.L.R.B.*, 424 U.S. 507, 513-17 (1976).  Private property owners also enjoy a general right to exclude others. *See Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994).  While Mr. McCain also suggests that the Mayor and Officer Henry were retaliating against him for filing a race discrimination lawsuit against a Downs Rachlin and Martin client, there is no indication in his pleading that the defendants knew the lawsuit pertained to race, or that they were motivated by any sort of discriminatory animus.

As to the notice of trespass allegedly issued by Officer Henry, this Court has previously explained that such a notice "merely informs the recipient that he or she is not to enter onto certain private property."  *Nolen v. Aldrich Pub. Library*, 2013 WL 3967924, at *8 (D. Vt. July 31, 2013).  Moreover, the Vermont Supreme Court has determined that delivering such a notice is "not an actionable wrong for which damages may be sought."  *Morse v. Sprague*, 2004 WL 5583289, at *1 (Vt. Jan. Term 2004)

(unpublished).  Accordingly, Mr. McCain has no valid cause of action against Officer Henry for delivering, at the request of a Panera employee, a notice of trespass.

Mr. McCain's last claim against the City of Burlington is that it requires renters to show proof of residency in the City, but does not require the same of permanent residences.  He brings this claim under the Privileges and Immunities Clause, but provides no factual context for the claim aside from stating that renters are required to show rent receipts.  Without any other factual background, the Court cannot find that he has stated a plausible claim of unlawful discrimination.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The motion to dismiss filed by the City of Burlington, Mayor Weinberger and Officer Henry is therefore **granted**.

V.   **Shaw's Supermarkets' Motion to Dismiss**

Mr. McCain claims that he twice applied for work at a Shaw's Supermarket in Vermont.  In the course of applying, he was allegedly told by a General Manager that Shaw's would not hire someone with a criminal record.  When Mr. McCain filed a charge with the EEOC, Shaw's allegedly requested his social security number.  Mr. McCain now contends that the request was unnecessary and retaliatory, as Shaw's already had his social security number

10

from a previous application.  ECF No. 93 at 29 ("Defendant Shaw's already had plaintiff['s] social security number when he previously applied with them . . . but made such assertion[] to retaliate against the plaintiff for filing a EEOC charge . . . in violation of Section 1981 tax clause.").  Although the pleadings are not clear, he may also be alleging that the request for his social security number was discriminatory.

To state a claim of either retaliation or discrimination under Section 1981, a plaintiff must allege an adverse employment action.  *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  This Court previously determined, with respect to a similar claim brought by Mr. McCain against Costco, that merely requesting a social security number does not constitute an adverse action.  The Court reaches the same conclusion here.  As Mr. McCain has failed to state a plausible cause of action against Shaw's, the motion to dismiss is **granted.**

## VI.  State Defendants' Motion to Dismiss

The Court previously dismissed claims brought against former Vermont Governor Peter Shumlin and the State of Vermont.  In the Second Amended Complaint, Mr. McCain asserts claims against two other state actors: former Attorney General William Sorrell and Assistant Attorney General David McLean ("State Defendants").  The claims against these State Defendants are that they "made discriminatory statements" and engaged in conduct "during the

proceedings, on account of race, to further the conspiracy."  ECF

No. 93 at 3.  The "proceedings" appear to include this

litigation, as Mr. McCain accuses AAG McLean of asserting

Eleventh Amendment immunity here, but not in the *McGarry* case.

He also accuses AAG McLean of saying, "Zack they got a whole

section for people like you Zack," thus "classif[ying] the

plaintiff on the basis of race."  *Id.* at 48.

Against the former Attorney General, William Sorrell, Mr.

McCain brings a claim of race discrimination, asserting that the

Attorney General failed to take action after receiving notice of

an EEOC cause finding against Costco.  He also alleges that the

Attorney General, together with the federal government and

Governor Shumlin, executed certain arrest and criminal conviction

guidelines "unevenly," failed to properly regulate the use of

credit and court information by employers, and generally

conspired to deprive Mr. McCain of his constitutional rights.

*Id.* at 46.

To the extent that Defendants Sorrell and McLean are being

sued in their official capacities for damages, those claims are

barred by the Eleventh Amendment.  The Eleventh Amendment

prohibits suits brought in federal court by citizens against a

state and its agencies, absent a waiver of immunity and consent

to suit by the state or a valid abrogation of constitutional

immunity by Congress.  *See, e.g., Puerto Rico Aqueduct & Sewer*

*Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 97–100 (1984).  The Eleventh Amendment also bars claims for damages brought against state employees sued in their official capacities.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Pennhurst*, 465 U.S. at 102.  Relevant to this case, there has been no waiver of the State's sovereign immunity and no abrogation of that immunity by Congress.  In fact, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment.  *See* 12 V.S.A. § 5601(g).  As Mr. McCain does not seek any sort of relief from the former Attorney General and AAG McLean aside from damages, the claims brought against them in their official capacities are **dismissed.**

In their personal capacities, the State Defendants argue for absolute immunity, noting that their alleged actions each involved actual or potential litigation.  In determining whether state officials are entitled to absolute immunity, courts look at "the nature of the function performed, not the identity of the actor who performed it."  *Forrester v. White*, 484 U.S. 219, 229 (1988).  The Supreme Court has held that state prosecutors are afforded absolute immunity for all actions arising from conduct "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  The

Second Circuit has extended prosecutorial immunity to state assistant attorneys general defending civil actions against the state and state employees. *See Barrett v. United States*, 798 F.2d 565, 569-70, 572-73 (2d Cir. 1986). An official seeking absolute immunity bears the burden of showing that such immunity is warranted for the function in question. *See Burns v. Reed*, 500 U.S. 478, 486 (1991).

In this case, AAG McLean is accused of asserting a particular defense in litigation against Mr. McCain, while he chose not to assert that same defense in litigation against a white pre-trial detainee. Assuming the truth of this allegation, AAG McLean's statements and pleading choices in litigation are plainly "associated" with the judicial process and entitled to absolute immunity. *Imbler*, 424 U.S. at 430; *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) ("This immunity attaches to conduct in court, as well as conduct preliminary to the initiation of a prosecution and actions apart from the courtroom."). Similarly, choices made by either the Attorney General or an AAG with respect to enforcement of an EEOC order or execution of sentencing criteria are entitled to absolute immunity. *Cf. Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions"). And even assuming

that AAG McLean made statements suggesting a racial bias, such bias does not strip him of his immunity.  *Id.* at 237 (government attorney "is shielded from liability for damages for commencing and pursuing the prosecution," regardless "of any allegations that his actions were undertaken with an improper state of mind").

As to Mr. McCain's claims of a conspiracy to deprive him of his rights, the Court has held previously and restates here that those claims are highly conclusory and speculative.  As such, they fail to state a plausible cause of action.  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end").  For each of these reasons, the motion to dismiss filed by the State Defendants is **granted.**

## VII. O'Neil and Greenlet Motion to Dismiss

Defendants Adam O'Neil and Patrick Greenlet have moved to dismiss for failure to timely serve the Second Amended Complaint. Because Mr. McLean is proceeding *pro se* and *in forma pauperis*, the Court has ordered the United States Marshals Service ("USMS") to serve all defendants.  The Second Circuit has held that *pro se* litigants proceeding *in forma pauperis* are entitled to rely on service by the USMS.  *Romandette v. Wheetabix Co.*, 807 F.2d 309,

311 (2d Cir. 1986).  Thus, "[g]ood cause under Rule 4(m) is established if the fault for failure to serve lies with the U.S. Marshals."  *Lewal v. Wiley*, 29 F. App'x 26, 28 n.2 (2d Cir. 2002); *see Stoenescu v. Jablonsky*, 162 F.R.D. 268, 270 (S.D.N.Y. 1995).

Defendants O'Neil and Greenlet submit that service in this case was untimely and failed to comply with Federal Rule of Civil Procedure 4(e)(2)(B).  Rule 4(e)(2)(B) requires either (1) delivery of a copy of the summons and the complaint to the defendant personally, (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age who resides there, or (3) delivering a copy of each to an agent "authorized by appointment or by law" to receive service of process.  Fed. R. Civ. P. 4(e)(2)(B).  In this case, the USMS delivered copies of the summons and complaint to the Chief of Police at the Vergennes Police Department.  It is not clear to the Court whether the Chief was authorized to accept service on behalf of his officers in either their official or individual capacities.  Defendants' motion suggests that he was not so authorized.

Because the USMS has been tasked with serving all defendants, the motion to dismiss Mr. McCain's claims against defendants O'Neil and Greenlet is **denied**.  The USMS shall either

confirm that service in this case was proper, or accomplish service in a manner that complies with Federal Rule of Civil Procedure 4(e)(2)(B).

## VIII. Conclusion

For the reasons set forth above, Mr. McCain's motion for leave to file an interlocutory appeal, for a certificate of appealability, or in the alternative for reconsideration (ECF No. 136) is **denied**; the motion to dismiss filed by the City of Burlington, Mike Henry, and Miro Weinberger (ECF No. 139) is **granted**; the motion to dismiss filed by Shaw's Supermarkets (ECF No. 141) is **granted**; the motion for clarification filed by Costco and Mary Ahrens Vadasz (ECF No. 147) is **granted**; the motion to dismiss filed by defendants David McLean and William Sorrell (ECF No. 153) is **granted**; and the motion to dismiss filed by defendants Patrick Greenlet and Adam O'Neil (ECF No. 165) is **denied**.

Dated at Burlington, in the District of Vermont, this 14th day of February, 2017.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge